ERIK J. CHRISTENSEN, Bar No. 314595
*erik@goldsummit.legal*
**GOLD SUMMIT LEGAL, INC.**
548 Market St., Ste. 41750
San Francisco, CA 94104
Tel: (415) 516-2760

Attorney for Plaintiff
KEVIN MCCARTHY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| KEVIN MCCARTHY, on behalf of himself, the aggrieved employees, and the similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>XEROX CORPORATION; MR. COPY, INC.; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1. Disability Discrimination;<br>2. Failure to Engage in the Good-Faith Interactive Accommodation Process;<br>3. Failure to Accommodate Disability;<br>4. Retaliation for Seeking Disability Accommodations;<br>5. Whistleblower Retaliation in Violation of Labor Code §§ 98.6 and 1102.5;<br>6. Failure to Prevent Discrimination and Retaliation;<br>7. Negligent Hiring, Supervision, and/or Retention;<br>8. Wrongful Termination;<br>9. Intentional Infliction of Emotional Distress;<br>10. Failure to Produce Employment Records;<br>11. Cal. Private Attorneys General Act ("PAGA"); and<br>12. Class and Collective Action for Violations of the California Labor Code and Business and Professions Code, including California's Unfair Competition Law.<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, KEVIN MCCARTHY who, by and through his attorneys of record, hereby files this Complaint in the Central District where he resides and was employed (*see* ¶¶ 7-9), and he alleges as follows.

## THE PARTIES TO THIS ACTION

1. Plaintiff KEVIN MCCARTHY (hereafter "**Plaintiff**" or "**Mr. McCarthy**") is an individual residing in Orange County, California. At all times relevant to this action, Plaintiff has worked for Xerox and/or MRC (as defined below) while residing and working in the state of California.

2. *The Aggrieved Employees*. The "**aggrieved employees**" are all of Xerox' (as defined below) non-exempt and sales employees (regardless of their exemption status) working in California at any time between June 30, 2024 and the date Plaintiff's Private Attorneys' General Act ("**PAGA**") claim in this action is resolved. As explained herein, sales employees – like Plaintiff – are included in the definition for the Aggrieved Employees because it is easily determined whether they were misclassified as exempt employees (*i.e.*, they should have been paid and treated as non-exempt employees). (*See* Indust. Welfare Comm. Wage Order No. 4 (the "**Wage Order**"), § 1(A).)

3. *The Putative Classes*. The putative "**Xerox Class**" includes all of Defendant Xerox Corporation's employees who worked in California in a sales or sales-related role – like Plaintiff – at any time from four years prior to the date this lawsuit is filed and the date Plaintiff's class claims are resolved. The "**MRC Class**" includes all of Defendant Mr. Copy, Inc.'s employees who worked in California in a sales or sales-related role – like Plaintiff – at any time from four years prior to the date this lawsuit is filed and the date Plaintiff's class claims are resolved. Together, the Xerox Class and MRC Class (and their subclasses, if any) are collectively referred to herein as the "**putative class**" or the "**similarly situated employees**."

4. Defendant XEROX CORPORATION (hereafter "**Xerox**") is headquartered in Norwalk Connecticut, but is incorporated in the state of New York. Xerox is a subsidiary of Xerox Holdings Corporation, which is also incorporated in New York. However, Xerox has

purposefully done business in the state of California at all times relevant to this action, including within Orange County. The company provides printing, scanning, and photocopy technology and related services (*e.g.*, document management, workflow automation, and IT support). Xerox is presently a Fortune 500 company, which is publicly traded on major, global stock exchanges, including the NASDAQ under ticker symbol $XRX. At all times relevant to this action, Xerox employed more than 50 individuals. Furthermore, since 2019 Xerox controls the Human Resources (including payroll and discipline) for each of its down-stream subsidiaries operating in California (which are wholly or majority owned by Xerox), and those subsidiaries operate under the same policies and practices outlined herein.

5. Defendant MR. COPY, INC. (hereafter "**MRC**") was incorporated in California in 2009 by its Chief Executive Officer, Ezequiel Bardas, and it has maintained its headquarters in San Diego ever since. MRC remains a California corporation. Xerox, however, has reported to the Securities Exchange Commission that it owned 50% or more of MRC's voting stock between at least 2016 to 2023. Accordingly, and on information and belief, Xerox directed MRC in the management of its employees and its operations, including the sale of Xerox (and Xerox-related) products and services in California. At all times relevant to this action, MRC employed more than 50 individuals.

6. *Doe Defendants*. Plaintiff does not know the true names and capacities, whether individual, corporate or otherwise, of the defendants sued herein as DOES 1 through 10, inclusive, and therefore Plaintiff sues these defendants by such fictitious names. Plaintiff will amend this Complaint to state the true names and capacities of such fictitiously named defendants when their identities are ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants are responsible in some manner for the occurrences herein alleged and that Plaintiff's damages, as alleged, were directly or proximately caused by these defendants. Hereafter, Xerox, MRC, and DOES 1 through 10, are collectively referred to as the "**Defendants**."

//

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 (exclusive of interest and costs), and the Parties to this action diverse. For example, Plaintiff is domiciled in Orange County, California, and the aggrieved employees and putative Class were domiciled (or worked) in California at all times relevant to this action. In contrast, Xerox is incorporated and headquartered in New York, and XBS is incorporated in Delaware and headquartered in Florida.

8. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(a)-(d) because Plaintiff resides in this District, Defendants do business within California, and Plaintiff's claims in this action predominately arise from incidents occurring in this District.

9. Venue is also proper in the Southern Division of the Central District because Plaintiff's claims in this action predominately arise from incidents occurring in this Division (*e.g.*, Orange County).

## GENERAL ALLEGATIONS

10. Mr. McCarthy is a highly educated and effective salesperson. He earned his Juris Doctor from University of California ("**UC**") College of the Law, San Francisco (formerly UC Hastings) in 2014, and a certificate from UC Berkeley's Chief Digital Officer Program in 2023. He is also a graduate of UC Riverside with a Bachelor's Degree in Comparative Ancient Civilizations, with a minor in Biology.

11. Plaintiff began working for MRC on March 20, 2016 as a Government Sales Specialist, given his military background. Essentially, Plaintiff worked as a salesperson. But he performed so well (including for his efforts in creating MRC's public sector sales program) that he received promotions, substantial pay raises, or performance-based bonuses throughout his time at MRC. For example, MRC promoted Mr. McCarthy to the position of K-12 Sales Manager on October 7, 2016, and it gave him substantial performance-based bonuses and pay raises on August 29, 2016, May 22, 2018, January 30, 2020, February 20,

2020, and March 18, 2020. Notably: Mr. McCarthy often worked 12-to-16-hour days and as many as seven days per week to achieve these results.

12. Mr. McCarthy's performance caught the eye of the President of Xerox Business Solutions, LLC, who personally recommended him for the role of Digital Services Commercial Consultant at Xerox. Shortly thereafter, Xerox extended this offer to Mr. McCarthy. He accepted and he worked in this role from January 2, 2023 until his separation on January 17, 2025.

13. Mr. McCarthy performed admirably at all times in his roles at Xerox. For example, he achieved 370% of his new business plan in 2024 and 2,250% of his renewal plan that year. As a result, the Digital Services Unit to which he was assigned was one of the only profitable business units at Xerox in 2024.

## MR. McCARTHY'S DISABILITY AND ACCOMMODATION NEEDS

14. Xerox was aware at all times relevant to this action that Mr. McCarthy had suffered a spinal cord injury on July 20, 2018 while he was employed by MRC. This injury classified Mr. McCarthy as a high-functioning quadriplegic, but through hard work – he was able to return to work after about four months of recovery time. Accordingly, MRC's personnel file for Mr. McCarthy noted this injury, and Mr. McCarthy openly discussed with leadership his disability and his resulting limitations.

15. In September 2024, Mr. McCarthy began having difficulty using his right arm and hand, and he was experiencing pain from his neck down to his hand along with radically decreased dexterity in that appendage. Ultimately, he learned that nerve damage was causing the muscles in his forearm to begin dying. He specifically informed his management of the change in his condition, how it was impacting him, and let them know that his physician told him that he required surgery in early 2025, which would have a three-month recovery period.

16. Mr. McCarthy opted not to file a workers' compensation claim to avoid upsetting Xerox, despite his work-related activities being the aggravating factor for his spinal injury.

17. At no time did Xerox engage Mr. McCarthy in the interactive accommodation process to see how they could help him accomplish his tasks without further aggravating his foregoing injuries. As a result, Mr. McCarthy powered through, risking his health in the process.

XEROX' DISCRIMINATION AND RETALIATION.

18. On October 21, 2024, Mr. McCarthy noticed that Xerox had not paid him his earned commissions in September, to the amount of approximately $127,000. He therefore wrote Xerox asking it to explain the situation. Xerox did not immediately reply. So, on November 19, 2024, Mr. McCarthy repeated his request to Xerox.

19. On November 20, 2024, Lori Wanlass, Xerox' Commission Payroll Manager, replied to Mr. McCarthy that his commissions had been corrected to align with his sales commission agreement and that Xerox would soon be paying him his earned and owing commissions. But Xerox never did so.

20. On December 3, 2024, Mr. McCarthy followed up with his executive leadership team (including Steve Bandrowczak, Chief Executive Officer ("**CEO**")) about his sales commissions, and Mr. Bandrowczak replied that his executive would assist however they could. But once again, Xerox did not follow through because it had a different agenda.

21. On December 5, 2024, Mr. McCarthy told Xerox that his surgery date was scheduled for February 13, 2025.

22. On December 16, 2024, Xerox told Mr. McCarthy that it would be *retroactively* capping his sales commissions at 350%, whereas it never capped his commissions before. This was also contrary to Mr. McCarth's then-current sales commission agreement with the company: "Xerox' 2024 Compensation Plan, US Channel Sales Employee (Digital Services Commercial Consultant)" (the "**Sales Commission Agreement**"). Stephen Miller, Xerox' Chief Digital Officer ("**CDO**"), Denise Patko, VP of Human Resources, and Camell Branch Selby, VP of Digital Services were present for this discussion. By this time, Mr. McCarthy had already earned approximately $140,000 in unpaid commissions under Xerox' then-current Sales Commission Agreement. And by the

end of January 2025 – before a new sales agreement was installed – he had earned at least $15,000 more. In total, Xerox owed Mr. McCarthy approximately $155,000 in earned sales commissions, which Xerox' CDO was trying to withhold in violation of Xerox' Sales Commission Agreement with Mr. McCarthy. (Lab. Code § 2751 [governing the basic requirements of such contracts].)

23. Mr. McCarthy pressed back against Xerox' efforts to breach the foregoing sales commission agreement. He specifically expressed his concern to Xerox that this action may be considered wage theft under California law. Mr. McCarthy also voiced that it was hard for him to believe that Xerox would take this action after seeing both the amount of business he brought the company – particularly after he had notified them that he suffered a work injury from working so hard.

24. Ultimately – Xerox refused to change course, so Mr. McCarthy notified them that he had retained counsel to examine this issue. On January 17, 2025, Stephen Miller (Xerox' CDO) told Mr. McCarthy that he was being fired, that his email was cutoff, and that – while he would be paid through February 1, 2025 – he was no longer expected to work.

25. Mr. Miller did not go through the proper channels before doing so, but Xerox blessed off on this by knowing of it and not stepping in to correct this issue before Mr. McCarthy's termination became effective. In doing so, Xerox failed to pay Mr. McCarthy his earned sales commissions – which, by then, *exceeded* $155,000. This also left Mr. McCarthy without the healthcare coverage that he planned to rely on for his spinal surgery on February 13, 2025.

26. In an effort to cover its tracks, Xerox' CDO also terminated several of Xerox' other high-performing salespeople in order to similarly to deny them their earned commissions. And he did this without notifying the heads of the terminated employees' departments until after the decision was made and noticed to those employees.

27. On information and belief, several other Xerox employees lodged ethics complaints with the company's HR team concerning their unpaid wages and unlawful terminations.

UNPAID WAGES

28. At all times relevant to this action, Defendants each paid Mr. McCarthy on a salary-bases, treating him an exempt employee. The remainder of Mr. McCarthy's wages came in the form of sales commissions and bonuses, which varied significantly over time. Furthermore, Defendants consistently failed to pay Mr. McCarthy his sales commissions on a bi-weekly basis, choosing instead to pay him these wages on a monthly (or longer) basis.

29. While Mr. McCarthy worked for Defendants, he always did so under direct supervision – meaning that he did not spend 50% or more of his time exercising independent judgment or discretion, supervising others, or crafting/implementing corporate policy. Mr. McCarthy also did not travel very much in his sales role. Given the foregoing, Defendants misclassified Mr. McCarthy as an exempt employee for every payroll. In other words, Defendants were required to pay Mr. McCarthy for all of his hours worked at his *hourly* rate of pay (not on a salary basis). But they never did so, resulting in them owing to Mr. McCarthy a significant amount of unpaid wages and related civil penalties explained further herein. This is because – due to their misclassification of Plaintiff – they did not track his hours worked on any basis, whether *de minimis*, rounded, or otherwise.

30. Defendants did not tell Mr. McCarthy that he could (or should) be taking meal and rest breaks each day as required for non-exempt employees under California Labor Code §§ 226.7 and 510. Accordingly, Mr. McCarthy consistently and knowingly worked through all of the time periods in which Defendants were lawfully obligated to provide him with these breaks. Defendants also did not pay Mr. McCarthy any of the break premiums required by the foregoing statutes whenever one of his breaks was missed, short, interrupted, or untimely (*i.e.*, not taken at the time required by statute).

31. These missed break premiums, which California law treats as wages earned and owing, were also not reflected on Mr. McCarthy's pay stubs that he received from Defendants.

32. Defendants consistently failed to pay Mr. McCarthy his foregoing wages in the pay period in which they were earned, as required by California Labor Code § 204.

33. Mr. McCarthy also incurred numerous expenses for Defendants' benefit, which they knew (or should have known) of and did not reimburse. These included, but were not limited to: (1) internet expenses incurred while working from home whenever Mr. McCarthy was not in the office; and (2) costs related to use of personal computing equipment (*e.g.*, mice, monitors, keyboards, printers with toner and paper, etc.)

34. When Xerox terminated Mr. McCarthy, it failed to pay him all of his business expenses, let alone his earned and owing wages (*e.g.*, hourly wages owed due to misclassification, break premiums, and sales commissions) as required by California Labor Code §§ 201, 202, 203, and 204.

35. The aggrieved employees and putative class members each suffered the same knowing and intentional violations by Defendants (or either of them) in Paragraphs 27 through 33 above during the time periods relevant to this action.

GENERAL DAMAGES, FEES, COSTS, AND ADMINISTRATIVE REMEDIES

36. **Plaintiff's Economic Damages:** As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, medical and related expenses, and interest thereon, in a sum to be proven at trial.

37. **Plaintiff's Non-Economic Damages:** As a consequence of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, extraordinary psychological and emotional distress, humiliation, and mental and physical injury, pain, and anguish in a sum to be proven at trial.

38. **Punitive Damages:** Defendants' conduct herein constitutes oppression and/or malice entitling Plaintiff to an award of exemplary/punitive damages. (Civ. Code § 3294; *Clark v. Allstate Insurance Co.*, 106 F.Supp.2d 1016, 1018 (S.D. Cal., 2000).)

A. *Malice*: Defendants' conduct was committed with malice within the meaning of California Civil Code § 3294, including the following: (1) Defendants acted with intent to cause Plaintiff emotional, physical, and financial injury, and/or acted with reckless disregard toward Plaintiff's injuries; (2) Defendants took multiple adverse

employment actions against Plaintiff because of his disabilities, age, veteran status, and/or legal utilization of California leave laws; and (3) Defendants' conduct was despicable and committed with willful and conscious disregard for Plaintiff's rights, health, and safety, including Plaintiff's right to workplace accommodations and to be free of discrimination, harassment, retaliation, and wrongful termination.

B. *Oppression*: Additionally, or alternatively, Defendants' conduct, described herein, was committed with oppression within the meaning of California Civil Code § 3294. This includes Defendants' actions against Plaintiff, taken because of Plaintiff's disabilities, and good faith efforts to secure his legal entitlement to disability-related leave, and his whistleblowing activities relating to Xerox' unlawful pay structure and wage theft. Defendants' conduct subjected Plaintiff to cruel and unjust hardship not only through their direct actions, but by purposefully disregarding Plaintiff's right to disability accommodations and a workplace free of discrimination, harassment, and retaliation. As a direct result, Plaintiff has suffered extreme emotional distress as described in this Complaint.

39. **Exhaustion of Administrative Remedies.**

A. **LWDA Notice.** On May 5, 2025, and within the statute of limitations period afforded by law, Plaintiff e-filed his Private Attorneys General Act ("**PAGA**") notice with California's Labor and Workforce Development Agency ("**LWDA**"). (Lab. Code § 2699.3(a)(2).) The same day, Plaintiff sent, via certified mail, a copy of this notice to Defendants at their headquarters addresses. (Lab. Code § 226(c).) Over 65 days have passed from this date without Plaintiff receiving word from the agency about the same, and so Plaintiff has exhausted his administrative agencies with regard to his PAGA claims. Furthermore, to Plaintiff's knowledge, Defendants did not take any remedial action within 60 days of Plaintiff's PAGA notice. (Lab. Code § 2699.3(h)(1).)

B. **Right-to-Sue.** Plaintiff exhausted his administrative remedies for his Fair Employment and Housing Act ("**FEHA**"; Lab Code §§ 12900, *et seq.*) claims herein on May 5, 2025, and within the statute of limitations period afforded by law, by filing such charges herein with the California Civil Rights Department ("**CRD**"). The CRD issued Plaintiff his

Right to Sue Letter the same day. Attached to this Complaint, as **Exhibit A**, is a true and accurate copy of Plaintiff's Right to Sue Letter.

**FIRST CAUSE OF ACTION**

**Disability Discrimination in Violation of FEHA**

**(Gov. Code §§ 12900, *et seq.*)**

**(By Plaintiff Against Xerox and DOES 1-50)**

40. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

41. FEHA (Gov. Code §§ 12900, *et seq*.) and California Constitution (Art. I, §§ 7-8) make it unlawful to discriminate or harass an individual on the basis of their protected characteristics, like age, disabilities (actual or perceived), and/or veteran status. At all times referenced in this Complaint these laws were in full force and effect and was binding on Defendants. (*E.g.*, Gov. Code §§ 12940(a) and (j), and 12945.)

42. FEHA, in particular, prohibited Xerox from discriminating against Plaintiff (*i.e.*, taking any manner of adverse employment action) substantially because of any of Plaintiff's protected characteristics. (*Ibid.*) "Adverse employment actions" may include, but are not limited to: (1) termination; (2) demotion; (3) harassment; (4) being placed on administrative leave; (5) refusing promotion; (6) unjustifiably bad performance evaluations; (7) unfavorable job reassignments or tasks; (8) reducing working hours; (9) rescinding promised training; and (10) any conduct that is reasonably likely to impair one's job performance or their prospects for advancement or promotion (*e.g.*, falsely claiming insubordination). (*See*, *e.g.*, *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal.4th 1028, 1053-1061 (2005); *Lopez v. La Casa De Las Madres*, 89 Cal.App.5th 365, 382 (2023) [terminating an employee because they used their maximum statutory leave may still be an adverse employment action where additional leave under FEHA is available], citing Gov. Code § 12945; *see also* Cal. Code of Regs., tit. 2, § 11040 [same].)

43. Mr. McCarthy was a 53-year-old disabled veteran. The termination of his employment by Defendants constitutes discrimination based on age, disability, and/or

veteran status in violation of Government Code § 12940(a). There was clear animus toward Mr. McCarthy based on his protected characteristics above. The temporal proximity *alone* establishes this fact:

- September 2024: Mr. McCarthy shares with Xerox that he requires surgery and a three-month recovery period because his work aggravated his back injury;
- December 5, 2024: Mr. McCarthy tells Xerox that his surgery is scheduled for February 13, 2025 and he will require approximately three months of recovery time;
- On January 17, 2025: Xerox tells Mr. McCarthy that he is being fired, despite him being one of their top salespeople. This means the decision to fire him occurred prior to this date.

Furthermore, on information and belief, Mr. Miller and other senior members of Xerox had internal discussions about their dislike of Mr. McCarthy's age, and veteran/disability status. They figured that they could replace him a younger, non-veteran, for less money while UPS soaked up the income from Mr. McCarthy's hard-earned accounts.

44. Xerox also approved (*i.e.*, adopted) the unlawful terminations initiated by Mr. Miller because – after it learned of them – it took no action to stop or reverse them.

45. As a direct, foreseeable, and proximate result of Xerox' unlawful actions, Plaintiff has suffered – and continues to suffer – substantial losses in earnings, equity, and other employment benefits, which have caused him to incur other economic losses surrounding and following his necessary surgery (*e.g.*, medical expenses and/or coverage lost for his entire family). This is compounded by the fact that Mr. McCarthy is a salesperson in his 50s, and given the space on his resume following his termination will severely impact his career and earning potential for years (if not decades) to come.

46. Xerox' misconduct has also resulted in Mr. McCarthy suffering severe emotional distress, anxiety, depression, humiliation, and mental anguish. These injuries manifested in physical symptoms including sleep disturbances, loss of appetite, and exacerbation of his existing medical conditions. The stress of losing his health insurance

coverage immediately before his scheduled surgery, and as his eldest daughter was leaving for college, has caused Mr. McCarthy particular anguish and fear for his health and wellbeing.

47. Xerox' conduct, described above and incorporated into this cause of action, was willful, malicious, and oppressive, thereby justifying an award of punitive damages under California Civil Code § 3294. For limited example, Xerox knew of Mr. McCarthy's disability and upcoming surgery, and then deliberately terminated him to avoid their accommodation obligations and to deprive him of his earned wages (*e.g.*, sales commissions).

48. Plaintiff is also entitled to recover his reasonable attorneys' fees and costs pursuant to Government Code § 12965(c)(6).

## SECOND CAUSE OF ACTION

**Failure to Engage in the Interactive Accommodation Process**

**(Gov. Code §§ 12900, *et seq.*)**

**(By Plaintiff Against Xerox and DOES 1-50)**

49. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

50. FEHA requires employers to engage their employees with physical or mental disabilities in "a timely, good faith, interactive process" to determine if any accommodations will allow the employee to perform the essential functions of their jobs. (Gov. Code § 12940(m)-(n).) Such accommodations may include, for example, additional leave – even where all other statutory leave has been exhausted – so the employee can recover from their disabilities and return to work. (Gov. Code §§ 12940, 12945; *Sanchez v. Swissport, Inc.* 213 Cal.App.4th 1331, 1338-1341 (2013).)

51. The employer must begin the interactive accommodation process when the employee requests an accommodation or when the employer knows, or should have known, about the employee's disability-related limitations. (*Lin v. Kaiser Foundation Hospitals*, 88 Cal.App.5th 712, 728 (2023); *Avila v. Continental Airlines, Inc.* 165 Cal.App.4th 1237, 1252

(2008); *see also* Cal. Code of Regs., tit. 2, § 11069.) The employer must also keep communicating with the employee in good faith to assess the nature of the employee's disabilities and the accommodations that might aid them in returning to work or in performing the essential functions of their jobs. (*Scotch v. Art Institute of California-Orange County, Inc.*, 173 Cal.App.4th 986, 1013-1014 (2009).) If an employer is responsible for the breakdown in communication, then they are liable for failing to engage in the interactive accommodation process in good faith. (*Ibid.*)

52. Xerox knew of Mr. McCarthy's disability since at least July 2018, when he suffered his spinal cord injury. Xerox further knew, beginning in September 2024, that Mr. McCarthy's condition had worsened due to his workload, requiring surgery and a three-month recovery period. Despite this knowledge, Xerox never initiated the interactive process, never explored potential accommodations, and never discussed how Mr. McCarthy could continue performing his job functions with reasonable modifications.

53. Instead of engaging in the required interactive process, Xerox notified Mr. McCarthy that it was terminating him on January 17, 2025 – just days after learning of his February 13, 2025 surgery date. This complete failure to engage in any interactive process violates Government Code § 12940(n) and demonstrates Xerox' willful, malicious, and oppressive conduct that flies in the face of the requirement that this process be approached in good faith.

54. As a direct and proximate result of Xerox' failure to engage in the interactive process, Plaintiff suffered economic damages including lost wages, lost benefits, lost health insurance coverage needed for his surgery, and medical expenses. Plaintiff also suffered non-economic damages including severe emotional distress, anxiety about his medical condition, and physical manifestations of stress. These damages are ongoing and in amounts to be proven at trial.

55. Based on the facts alleged and incorporated into this cause of action: Xerox' conduct was malicious and oppressive as it deliberately avoided the interactive process to evade its accommodation obligations while seeking to discriminate and/or retaliate against

Mr. McCarthy because of his injuries. Accordingly, Plaintiff requests punitive damages against Xerox under Civil Code § 3294.

56. Plaintiff is entitled to his attorneys' fees and costs under Government Code § 12965(c)(6).

**<u>THIRD CAUSE OF ACTION</u>**

**Failure to Accommodate Disability**

**(Gov. Code §§ 12940, *et seq.*)**

**(By Plaintiff Against Xerox and DOES 1-50)**

57. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

58. California Government Code § 12940(m) makes it illegal for "an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." (*See also* Gov. Code § 12926.)

59. Mr. McCarthy's spinal cord injury and resulting quadriplegia constitute physical disabilities under FEHA. His deteriorating condition in <u>September 2024</u>, including nerve damage and muscle atrophy in his arm, further limited his major life activities. Despite knowing of these disabilities and limitations, Xerox failed to provide any accommodations whatsoever.

60. Reasonable accommodations could have included modified work duties, ergonomic equipment, flexible scheduling for medical appointments, leave for surgery and recovery, or temporary reassignment to less physically demanding tasks. Xerox provided none of these accommodations and instead terminated Mr. McCarthy to avoid its accommodation obligations.

61. As a direct and proximate result of Xerox' failure to accommodate, Plaintiff suffered economic damages including lost wages totaling over $155,000 in unpaid commissions alone, lost future earnings, lost health insurance at a critical time, and increased medical expenses. Plaintiff also suffered severe emotional distress from being forced to work

without accommodations while his condition deteriorated, and anxiety about his ability to obtain necessary medical care.

62. Based on the facts alleged and incorporated into this cause of action: Xerox' failure to accommodate was willful, oppressive, and taken in conscious disregard of Mr. McCarthy's rights and his needs as a human being, thereby justifying a punitive damages award against Xerox under Civil Code § 3294.

63. Plaintiff is entitled to his attorneys' fees and costs under Government Code § 12965(c)(6).

## FOURTH CAUSE OF ACTION

**Retaliation for Engaging in Protected Activity in Violation of FEHA**

**(Gov. Code § 12940(h) and (m)(2))**

**(By Plaintiff Against Xerox and DOES 1-50)**

64. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

65. FEHA prohibits any employer from retaliating "against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under" FEHA. (Gov. Code § 12940(h); *see also Id.* at § 12926.) Government Code § 12940(m)(2) also makes it illegal for "an employer or other entity covered by this part to … retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted." As above, Defendants were aware of FEHA's application pursuant to the training they received prior to taking the action described herein.

66. Plaintiff engaged in multiple actions protected by FEHA, as described herein. These include, *but are not limited to*: (1) informing Xerox of his disability and work-related limitations; (2) notifying Xerox of his need for surgery and recovery time; (3) implicitly requesting accommodations by explaining his medical needs; and (4) opposing Xerox' discriminatory treatment.

67. Xerox retaliated against Mr. McCarthy for these protected activities by terminating his employment immediately after he retained counsel to address the company's unlawful conduct. The temporal proximity between Mr. McCarthy's protected activities and his termination establishes a prima facie case of retaliation.

68. As a result of this retaliation, Plaintiff suffered economic damages including loss of employment, loss of $155,000 in earned commissions, loss of health insurance, and other benefits. Plaintiff also suffered severe emotional distress, humiliation, and anxiety about his medical care and financial security – including that of his family.

69. Based on the facts alleged and incorporated into this cause of action: Xerox' retaliatory conduct was willful, malicious, and oppressive, thus justifying a punitive damages award against Xerox under Civil Code § 3294.

70. Plaintiff is entitled to his attorneys' fees and costs under Government Code § 12965(c)(6).

## FIFTH CAUSE OF ACTION

**Whistleblower Retaliation**

**(Lab. Code §§ 98.6, 233, and 1102.5)**

**(By Plaintiff Against Xerox and DOES 1-50)**

71. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

72. Labor Code § 233(c) makes it unlawful for employers to "deny an employee the right to use sick leave or discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for using, or attempting to exercise the right to use, sick leave to attend to an illness or the preventive care of a family member, or for any other reason specified in subdivision (a) of § 246.5." Labor Code § 246.5(a)(1) allows use of sick leave for "[d]iagnosis, care, or treatment of an existing health condition …"

73. Labor Code § 1102.5, more broadly, makes it unlawful for any "employer, or any person acting on behalf of the employer" to retaliate against any employee for disclosing information "to a person with authority over the employee … if the employee has reasonable

cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Employers and their agents also "shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." (*Id.* at Subd. (c).) This statute is breached even if the employer already knew about the violation. (*People ex rel. Garcia-Brower v. Kolla's, Inc.* ("***Garcia-Brower***"), 14 Cal.5th 719, 721, 730 (2023) [merely approaching "an employer about workplace safety hazards, unpaid wages, or overtime violations" qualifies as protected activity].)

74. Labor Code § 98.6(a), in relevant part, prohibits any *person* from taking any manner of adverse employment action against an employee or applicant because they "engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2," "made a written or oral complaint that they are owed unpaid wages," "or because of the exercise by the employee or applicant for employment on behalf of themselves or others ***of any rights afforded them***." "By its terms, section 98.6 incorporates violations of other sections of the Labor Code, including section 1102.5." (*Garcia-Brower*, *supra*,14 Cal.5th at pp. 731-732.) "An employer who willfully refuses to hire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor." (Lab. Code § 98.6(b)(2).) "In addition to other remedies available, an employer who violates this section is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section, to be awarded to the employee or employees who suffered the violation." (*Id.* at Subd. (b)(3).)

75. Furthermore, on January 1, 2024, California passed Senate Bill 497, which amended (in relevant part) Labor Code §§ 98.6 and 1102.5 to "create a rebuttable presumption in favor of the employee's claim if an employer engages in any action prohibited

by this provision within 90 days of the protected activity specified in this provision." (Cal. Sen. Bill No. 497 (2022-2023 Reg. Sess.) as approved Oct. 8, 2023; *see also* Lab. Code § 98.6(b)(1).)

76. The laws above were in full effect at all times relevant to this action and were applicable to Defendants. This includes Xerox' CDO and its HR team who had authority to "investigate, discover, or correct the violation or noncompliance …" (Lab. Code. § 1102.5(a).)

77. Here, Mr. McCarthy engaged in protected whistleblower activity by: (1) complaining to Xerox about unpaid commissions totaling approximately $155,000; (2) expressing concern that Xerox' retroactive commission cap constituted wage theft under California law; (3) opposing Xerox' violation of Labor Code § 2751 regarding sales commission agreements; and (4) retaining counsel to address these violations. Xerox terminated Mr. McCarthy within days of these complaints, creating a rebuttable presumption of retaliation under Labor Code §§ 98.6(b)(1) and 1102.5. Furthermore, because Mr. McCarthy was requesting sick and/or disability leave to recover from his surgery – as explained in the cause of action above – Xerox' conduct also violated Labor Code § 233 and he is therefore entitled to recover all penalties and damages resulting therefrom.

78. As a result of this unlawful retaliation, Plaintiff suffered economic damages including lost wages, unpaid commissions of $155,000, lost benefits, and lost future earnings. Plaintiff also suffered severe emotional distress from the retaliatory termination. Additionally, Plaintiff is entitled to civil penalties of up to $10,000 per violation under Labor Code § 98.6(b)(3).

79. Based on the facts alleged and incorporated into this cause of action: Xerox' retaliatory conduct was willful, malicious, and oppressive, thus justifying a punitive damages award against Xerox under Civil Code § 3294.

80. Plaintiff is also entitled to attorneys' fees and costs under Labor Code §§ 98.6, 1102.5, and other applicable statutes.

## SIXTH CAUSE OF ACTION

**Failure to Prevent Discrimination and Retaliation**

**(Gov. Code §§ 12940, et seq.)**

**(By Plaintiff Against Xerox and DOES 1-50)**

81. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

82. Government Code § 12940(k) makes it an unlawful employment practice for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal.App.4th 1021, 1035 (2002) ["The employer's duty to prevent harassment and discrimination is affirmative and mandatory"]; *Trujillo v. NorthCounty Transit Dist.* (1998) 63 Cal.App.4th 280, 286 ["This § creates a tort that is made actionable by statute"]; *Taylor v. City of Los Angeles Dept. of Water & Power*, 144 Cal.App.4th 1216, 1240 (2006) ["… we conclude that retaliation is a form of discrimination actionable under [Gov. Code] § 12940, subdivision (k)"].)

83. Xerox violated this provision by, as set forth throughout this Complaint: (1) maintaining no effective policies or procedures for disability accommodation; (2) failing to train management on disability discrimination laws; (3) allowing its CDO to terminate disabled employees without HR oversight; (4) permitting retaliation against employees who complained about wage violations; and (5) failing to investigate or remedy known discrimination and retaliation.

84. Xerox' failure to prevent discrimination is demonstrated by its CDO's ability to unilaterally terminate multiple high-performing employees to avoid paying earned commissions, and its HR department's failure to intervene despite receiving ethics complaints about these practices.

85. As a direct and proximate result of Xerox' failure to prevent discrimination and retaliation, Mr. McCarthy suffered the injuries described herein. These include, but are not limited to, lost wages and benefits, harm to his career and reputation in his industry, and

the pain and suffering caused by him being terminated for advising Xerox of the law before his scheduled surgery.

86. Plaintiff also seeks to recover his costs and reasonable attorneys' fees.

**<u>SEVENTH CAUSE OF ACTION</u>**

**Negligent Hiring, Supervision, and/or Retention**

**(*Doe v. Capital Cities*, 50 Cal.App.4th 1038 (1996))**

**(By Plaintiff Against Xerox and DOES 1-50)**

87. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

88. Xerox owed Plaintiff a duty of care in appointing, hiring, retaining, and supervising persons who would not engage in discriminatory, harassing, or retaliatory conduct, or other illegal activity. (*Doe v. Capital Cities*, 50 Cal.App.4th 1038, 1053-1055 (1996).)

89. Xerox knew, or should have known, of its employees' propensity to engage in the misconduct described herein (*e.g.*, that of the CDO and DOES 1-50), but it hired them anyway. Xerox also knew, or should have known of the same individuals' actual misconduct herein, but failed to prevent it. Furthermore, Xerox did not punish (*e.g.*, terminate) the same individuals once it learned of their misconduct.

90. Xerox therefore breached their duty of care to Plaintiff with regard to hiring, failing to properly supervise, and retaining its CDO and DOES 1-50, as set forth herein.

91. Specifically, Xerox knew or should have known that its CDO, Stephen Miller, had a pattern of terminating high-performing employees to avoid paying earned commissions. Despite this knowledge and despite receiving ethics complaints about these practices, Xerox retained Mr. Miller and allowed him to continue terminating employees without proper oversight.

92. As a direct and proximate result of Xerox' negligent supervision and retention, Mr. McCarthy suffered the damages described herein. These include, but are not limited to, lost wages and benefits, harm to his career and reputation in his industry, and the pain and

suffering caused by him being terminated for advising Xerox of the law before his scheduled surgery.

**EIGHTH CAUSE OF ACTION**

**Wrongful Termination**

**(Gov. Code §§ 12940, *et seq*., and Public Policy)**

**(By Plaintiff Against Xerox and DOES 1-50)**

93. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

94. "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action [of wrongful or constructive discharge] and recover damages traditionally available in such actions." (*Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 170 (1980).) "[T]he cases in which violations of public policy are found generally fall into four categories: (1) refusing to violate a statute; (2) performing a statutory obligation (3) exercising a statutory right or privilege; and (4) reporting an alleged violation of a statute of public importance." (*Gantt v. Sentry Insurance*, 1 Cal.4th 1083, 1090-1091 (1992).)

95. As described herein, Mr. McCarthy was terminated for: (1) exercising his statutory rights under FEHA to disability accommodations; (2) reporting violations of California wage and hour laws; (3) exercising his right to use sick leave for medical treatment; and (4) opposing discriminatory and retaliatory conduct. Each of these activities were protected by fundamental public policies embodied in California law.

96. Xerox' termination of Mr. McCarthy violated these fundamental public policies and was therefore wrongful. The termination was particularly egregious given its timing – immediately before Mr. McCarthy's scheduled surgery – and its purpose – to avoid paying earned wages and providing disability accommodations.

97. As a direct and proximate result of this wrongful termination, Mr. McCarthy has suffered and continues to suffer the damages described herein. These include, but are not limited to, lost wages and benefits, harm to his career and reputation in his industry, and

the pain and suffering caused by him being terminated for advising Xerox of the law before his scheduled surgery.

**<u>NINTH CAUSE OF ACTION</u>**

**Intentional Infliction of Emotional Distress**

**(*Hughes v. Pair*, 46 Cal.4th 1035, 1050-1051 (2009))**

**(By Plaintiff Against Xerox and DOES 1-50)**

98. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

99. A defendant becomes liable for tortious Intentional Infliction of Emotional Distress ("**IIED**") where they, or their agents, have engaged in "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Hughes v. Pair* 46 Cal.4th 1035, 1050-1051, (2009).) Plaintiffs may also "pursue a claim for intentional infliction of emotional distress in the employment context where the conduct at issue violates [the] FEHA and also satisfies the elements of the claim …." (*Light v. Department of Parks & Recreation*, 14 Cal.App.5th 75, 101 (2017); *Lin v. Kaiser Foundation Hospitals*, 88 Cal.App.5th 712, 727-728 (2023) [IIED claims may be derivative of FEHA causes of action, and thus establishing a FEHA claim may be sufficient to establish an IIED claim].)

100. Xerox' conduct was extreme and outrageous in that it: (1) terminated a disabled employee immediately before his scheduled surgery; (2) deliberately deprived him of health insurance coverage needed for that surgery; (3) refused to pay him over $155,000 in earned commissions; (4) retaliated against him for asserting his legal rights; and (5) orchestrated a scheme to terminate multiple high-performing employees to avoid paying earned wages. This conduct exceeds all bounds of decency tolerated in a civilized society.

101. As a direct result of Defendants' outrageous conduct, Mr. McCarthy has suffered severe emotional distress, including anxiety, depression, sleep disturbances, and fear for his health and financial security – including that of his family. He also fears for the long-term impact of Xerox' misconduct, which will surely lessen his earning capacity in his industry throughout his lifetime.

**<u>TENTH CAUSE OF ACTION</u>**

**Failure to Produce Employment Records**

**(Lab. Code §§ 226, 247.5, 432, and 1198.5; Wage Order No. 4 § 7)**

**(By Plaintiff Against All Defendants and DOES 1-50)**

102. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

103. Upon request of any current or former employee, California employers must provide them with:

A. All copies of the employee's wage statements (*i.e.*, paystubs) within 21 days (Lab. Code § 226(b); Wage Order, § 7(A)(4) and (B));

B. All records of hours worked and paid sick days accrued by the employee within the same time period set forth above (Lab Code § 247.5; Wage Order, § 7(A)(3));

C. Copies of all documents the employee signed relating to their obtaining and retaining employment with the employer (Lab. Code § 432);

D. All copies of their piece rate or incentive payment plans, including an explanation of the incentive plan formula (Wage Order, § 7(A)(6));

E. The employees complete personnel file (*i.e.*, all records that should have been included therein) within 30 days of receiving the employee's request. (Lab. Code § 1198.5(b)(1).) The California Department of Industrial Relations (the Labor Commissioner's parent agency) has concluded that personnel files must include, but are not limited to, the following documents: (1) application for employment; (2) payroll authorization form; (3) notices of commendation, warning, discipline, and/or termination;

(4) notices of layoff, leave of absence, and vacation; (5) notices of wage attachment or garnishment; (6) education and training notices and records; (7) performance appraisals/reviews; and (8) attendance records.[1] The statute itself only excludes from personnel files: (a) records relating to the investigation of a possible criminal offense; (b) letters of reference; and (c) ratings, reports, or records obtained prior to the employee's employment, prepared by identifiable examination committee members, or obtained in connection with a promotional exam. (Lab. Code § 1198.5(h); *see also* Wage Order, § 7(A).)

104. Labor Code §§ 226(f) and (h) and 1198.5(k)-(l) each authorize an employee to recover $750 in civil penalties (totaling $1,500) if their employer fails to timely and fully comply with the obligations above. These statutes also grant employees injunctive relief to seek these files in court, and it authorizes them to recover their reasonable attorneys' fees and costs in doing the same.

105. Mr. McCarthy requested all of his employment records from Defendants on December 20, 2024. When Defendants failed to respond, he sent another written request on April 7, 2025. While Defendants produced *some* documents on April 14 and April 28, 2025, they omitted critical records including his: (1) all pay stubs; (2) sales commission agreements; (3) performance evaluations; (4) time-entry records; and (5) documents relating to his transfer from MRC to Xerox.

106. Defendants' failure to produce these records violates Labor Code §§ 226(c), 247.5, 432, and 1198.5(b), and Wage Order No. 7, thus entitling Mr. McCarthy to statutory penalties, injunctive relief, and his attorneys' fees and costs.

///

[1] https://www.dir.ca.gov/dlse/faq_righttoinspectpersonnelfiles.htm

## ELEVENTH CAUSE OF ACTION

**Private Attorneys General Act ("PAGA")**

**(Lab. Code §§ 2698, *et seq*.)**

**(By Plaintiff Against Xerox and DOES 1-50)**

107. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

108. Plaintiff, as an aggrieved employee, asserts this Private Attorneys' General Act ("**PAGA**") claim on behalf of the State of California, himself, and the other aggrieved employees, as defined above. (*Huff v. Securitas Security Services*, 23 Cal.App.5th 745, 751 (2018) [an employee suffering even one violation of the Labor Code has standing to represent all others under PAGA]; *Balderas v. Fresh Start Harvesting, Inc.*, 101 Cal.App.5th 533, 329-330 (2024).)

109. The statute of limitations period for this claim is from June 30, 2024 to the date this claim is adjudicated.

110. Labor Code § 2699(a) and (g) authorize aggrieved employees, on behalf of themselves and other current and former aggrieved employees, to bring a civil action to recover civil penalties pursuant to the procedures specified in Labor Code § 2699.3.

111. Labor Code § 2699(f) states, in relevant part, that where a Labor Code § provides a set civil penalty, then Plaintiff may seek recovery of that civil penalty via PAGA for each violation she and the aggrieved employees suffered per pay period. Where violated Labor Code sections do not state a penalty, PAGA generally provides those civil penalties at "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." (Lab. Code § 2699(f)(2).) Sixty-five percent (65%) of these penalties shall be distributed to the LWDA and the remaining thirty-five percent (35%) shall be payable to Plaintiff and the aggrieved employees. (*Id*., at subd. (i), as amended effective 2024.)

112. During the applicable time period, Plaintiff alleges, on behalf of himself and the other aggrieved employees, that Defendants violated, or owes penalties, fees, and/or costs under: Labor Code §§ 201, 202, 203, 204, 210, 218.5, 221, 226, 226.3, 226.7, 233, 245-249, 432.5-432.6, 510, 512(a), 551-552, 1174(d), 1194, 1194.2, 1197, 1197.1, 1198, 2800, and 2802, the Wage Order, Business and Professions Code §§ 17200, *et seq*., and all related local ordinances. These statutes, and Xerox' violations thereof, are described below:

A. Labor Code §§ 201 and 202 require employers to promptly pay their separating employees all wages owed to them. Labor Code § 203 provides that employers failing to do so are subject to a waiting time penalty equal to one day (*i.e.*, 8 hours) of pay for each day those wages go unpaid, for up to 30 days. Plaintiff alleges that Xerox failed to timely pay all wages owed to him and the aggrieved employees within the time required for their respective separations of employment in violation of Labor Code §§ 201, 202, and 203.

B. Labor Code § 204 requires employers to pay their employees all wages earned each pay period within that same timeframe. Labor Code § 210(a) applies a penalty for violating § 204 in the amount of $100 for each initial violation, per employee, and for each subsequent or willful/intentional violation: "two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

C. As above, Labor Code § 226 required Xerox to provide the aggrieved employees with accurate, itemized wage statements each pay period. Failure to do so results in civil penalties equal to "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Xerox consistently failed to provide the aggrieved employees with accurate, itemized wage statements in violation of Labor Code § 226.

D. Xerox failed to compensate the aggrieved employees with minimum wages for all hours worked, including pay for nonproductive time in violation of Labor Code §§ 204, 226.2, 1194, 1197, 1198, and any local minimum wage ordinance(s), thus incurring

additional penalties and liability under Labor Code §§ 210, 218.5, 218.6, 1194.2, 1197.1, and 1199. This was primarily due to Xerox misclassifying the aggrieved employees as exempt (*i.e.*, salaried) when they were actually *non-exempt* employees requiring hourly pay, including overtime, doubletime, and more. This issue can be easily tracked and determined through the timing, amount, and type of wages Xerox paid to the aggrieved employees and/or their respective teams' organizational structure.

E. Based on the foregoing, Xerox also failed to compensate the aggrieved employees with overtime wages for all time worked in excess of eight hours in a day and 40 hours in a week, and doubletime wages for all time worked in excess of twelve (12) hours in a day and all hours worked in excess of eight on the seventh consecutive day of work. This conduct violates Labor Code §§ 204, 510, 1194, and 1198, thus incurring additional penalties and liability under Labor Code §§ 210, 218.5, and 218.6.

F. Xerox failed to compensate the aggrieved employees with one hour's pay for each of their late, interrupted, and/or unprovided meal periods in violation of Labor Code §§ 204, 226.7, 512, and 1198.

G. Xerox failed to compensate the aggrieved employees with one hour's pay for each of their late, interrupted, and/or unprovided rest break in violation of Labor Code §§ 204, 226.7, 1198.

H. Xerox failed to compensate the aggrieved employees with all paid sick leave earned during their employment in violation of Labor Code §§ 204, 233, and 245-249 (the Healthy Workplaces, Healthy Families Act of 2014).

I. Xerox failed to reimburse the aggrieved employees for their reasonable business expenses in violation of Labor Code §§ 2800 and 2802, including (but not limited to), their personal cell phone, home internet, and home electricity usage all for the benefit of Xerox.

J. Xerox failed to maintain accurate employee records of Plaintiff and the aggrieved employees in violation of the Wage Order § 7, and Labor Code §§ 247.5 and

1174(d), including (but not limited to) accurate records of all hours worked and sick leave used and accrued.

K. Xerox required Plaintiff and the aggrieved employees to consent to non-compete and non-disclosure agreements in violation of Labor Code §§ 432.5 through 432.6 and Business and Professions Code §§ 16600.5 and 16601 through 16602.

L. Xerox failed to fully and/or timely produce to the aggrieved employees all of their paystubs, records of hours worked (*e.g.*, their work schedules and punch in/out times), documents they signed in the course of securing and maintaining employment with Xerox, and their personnel files. As a result, Xerox has violated Labor Code §§ 226, 247.5, 432, and 1198.5.

113. Plaintiff seeks, on behalf the other aggrieved employees and the State of California, all applicable penalties for Xerox' violations above, plus all applicable interest, subject to proof at trial.

114. Plaintiff also seeks reimbursement of his attorneys' fees and costs pursuant to Labor Code §§ 218.6 and/or 2699(g)(1).

**<u>TWELFTH CAUSE OF ACTION</u>**

**Class Action Allegations**

**(Lab. Code §§ 201, *et seq.*; Wage Order; Bus. & Prof. Code § 2800, *et seq.*)**

**(By Plaintiff Against All Defendants and DOES 1-50)**

115. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

116. **Class Action Allegations.** Plaintiff brings this action individually *and* as a class action pursuant to Federal Rules of Civil Procedure, Rule 23, on behalf of himself, the Xerox Class, and the MRC Class defined in Paragraph 3 above.

117. **Statutory Reference.** This cause of action is brought pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

118. **Class Size and Numerosity.** The putative classes are so numerous that joinder of all members is impracticable. On information and belief, the Xerox Class and

MRC Class each consist of dozens (if not hundreds) of members. The precise number and identity of the putative class members is unknown to Plaintiff at this time, but this information can be readily ascertained from Defendants' records.

119. **Commonality.** There are questions of law and fact common to the putative classes, including but not limited to whether Defendants':

A. Misclassified their sales employees as exempt;

B. Failed to pay them all wages earned including overtime and doubletime;

C. Failed to provide compliant meal and rest breaks;

D. Failed to timely pay sales commissions;

E. Failed to reimburse business expenses;

F. Failed to maintain accurate wage statements;

G. Conduct violates California Labor Code and Wage Orders; and – separately,

H. The proper measure of damages and restitution.

120. **Typicality.** Plaintiff's claims are typical of the claims of the Classes. Plaintiff and Class members were subjected to the same unlawful policies and practices regarding misclassification, unpaid wages, missed breaks, and other Labor Code violations.

121. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the putative class. Plaintiff has retained counsel competent and experienced in complex class action and employment litigation. Plaintiff has no interests antagonistic to or in conflict with those of the putative class.

122. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation of hundreds of claims would be unduly burdensome to the court system. Many putative class members lack the resources to prosecute individual actions. Class treatment will provide substantial benefits to both the parties and the court system.

123. **Predominance.** Questions of law and fact common to Class members predominate over any questions affecting only individual members. The liability of Defendants can be determined on a class-wide basis through common proof regarding their uniform policies and practices.

124. **Manageability.** This case is manageable as a class action. Defendants' records (or lack thereof) will readily permit identification of putative class members and calculation of their damages on a class-wide basis. (*Furry v. East Bay Publishing, LLC* (2018) 30 Cal.App.5th 1072, 1080-1081 [missing or incomplete time records create a presumption of liability sufficient for employees to prevail on their wage and hour claims in summary judgment because the employer requires these records to mount a defense to the employee's unpaid wage claims].)

125. **Relief Sought.** Plaintiff seeks, on behalf of the putative class: (a) unpaid wages including overtime and doubletime; (b) meal and rest break premiums; (c) unpaid sales commissions; (d) unreimbursed business expenses; (e) waiting time penalties; (f) wage statement penalties; (g) interest; (h) restitution under Business and Professions Code §§ 17200, *et seq*.; (i) injunctive relief; and (j) attorneys' fees and costs.

**CLASS CLAIM NO. 1: UNPAID MINIMUM WAGES**

**(Lab. Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1)**

126. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

127. At all relevant times, California Labor Code § 1182.12 set forth the applicable minimum wage rates, which Defendants were required to pay all non-exempt employees for each hour worked.

128. Defendants failed to pay Class members minimum wages for all hours worked because: (a) they misclassified employees as exempt when they did not meet exemption requirements; (b) they failed to track all hours worked; and (c) they required off-the-clock work without compensation.

129. Class members regularly worked in excess of 40 hours per week but were paid

only their salary, resulting in effective hourly rates below minimum wage when all hours are considered.

130. Class members are entitled to unpaid minimum wages, liquidated damages equal to the unpaid wages under Labor Code § 1194.2, interest, and attorneys' fees and costs under Labor Code §§ 218.6 and 1194.

**CLASS CLAIM NO. 2: UNPAID OVERTIME AND DOUBLETIME**

**(Lab. Code §§ 510, 1194, 1198; Wage Order § 3)**

131. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

132. Labor Code § 510 and the applicable Wage Order require overtime pay at 1.5 times the regular rate for work exceeding 8 hours per day or 40 hours per week, and double time for work exceeding 12 hours per day.

133. Defendants systematically failed to pay overtime and doubletime to the misclassified putative class members who regularly worked 60+ hours per week, including 12–16-hour days and work on seventh consecutive days.

134. Class members' regular rates of pay must include all remuneration, including commissions and bonuses, not just base salary. (*Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 871-872.)

135. Class members are entitled to all unpaid overtime and doubletime wages at their proper regular rates, plus interest and attorneys' fees.

**CLASS CLAIM NO. 3: MEAL AND REST BREAK VIOLATIONS**

**(Lab. Code §§ 226.7, 512, 516; Wage Order §§ 11-12)**

136. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

137. California law requires employers to provide 30-minute meal periods before the fifth hour of work and 10-minute rest breaks every four hours, or pay one hour of premium pay for each violation.

138. Defendants failed to provide compliant meal and rest breaks to Class members

who routinely worked through breaks to meet sales quotas and respond to customer demands.

139. Defendants failed to pay premium wages for missed, late, short, or interrupted breaks, and failed to include these premiums on wage statements.

140. Class members are entitled to one hour of pay at their regular rate for each meal and rest break violation, plus interest.

**CLASS CLAIM NO. 4: UNPAID SALES COMMISSIONS**

**(Lab. Code §§ 200, 204, 221, 2751)**

141. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

142. Sales commissions constitute wages under Labor Code § 200 and must be paid at least twice per month under Labor Code § 204.

143. Defendants systematically delayed commission payments, paying them monthly or quarterly rather than bi-weekly, and retroactively altered commission structures to reduce amounts owed.

144. Defendants unlawfully withheld earned commissions upon termination and failed to comply with written commission agreement requirements under Labor Code § 2751.

145. Class members are entitled to all unpaid commissions, waiting time penalties, and interest.

**CLASS CLAIM NO. 5: WAGE STATEMENT VIOLATIONS**

**(Lab. Code § 226)**

146. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

147. Labor Code § 226(a) requires accurate itemized wage statements showing all hours worked, rates of pay, and wages earned.

148. Defendants' wage statements to the putative class members failed to accurately show: (a) total hours worked by misclassified employees; (b) correct regular rates including commissions; (c) overtime hours and rates; (d) meal and rest break premiums owed; and (e) all wages earned each period.

149. The putative class members are entitled to penalties of $50 for initial violations and $100 for subsequent violations up to $4,000 per employee, plus costs and attorneys' fees.

**CLASS CLAIM NO. 6: WAITING TIME PENALTIES**

**(Lab. Code §§ 201-203)**

150. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

151. Labor Code §§ 201-202 require immediate payment of all wages upon termination. Section 203 imposes penalties of one day's wages for each day payment is delayed, up to 30 days.

152. Defendants failed to pay all wages owed to the putative class who separated from employment, including unpaid overtime, commissions, and break premiums.

153. Based on the foregoing, putative class members who separated from employment with either of the Defendants are entitled to waiting time penalties of up to 30 days' wages.

**CLASS CLAIM NO. 7: UNREIMBURSED BUSINESS EXPENSES**

**(Lab. Code §§ 2800, 2802)**

154. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

155. Labor Code § 2802 requires employers to reimburse all necessary business expenses incurred by employees.

156. Defendants failed to reimburse the putative class members for necessary business expenses including: home internet for remote work, personal cell phone use, home office equipment, mileage, and other expenses incurred for Defendants' benefit.

157. The putative class are entitled to reimbursement of all business expenses with interest.

///

**CLASS CLAIM NO. 8: UNFAIR COMPETITION**

**(Bus. & Prof. Code §§ 17200, *et seq*.)**

158. Plaintiff reincorporates each other Paragraph in this Complaint as though realleged and incorporated herein by reference.

159. Business and Professions Code §§ 17200, *et seq*. prohibits any unlawful, unfair, or fraudulent business practice and expands the statute of limitations for several unpaid wage claims from three years to four.

160. Defendants' systematic violations of the Labor Code constitute unlawful business practices. Their conduct was also unfair as it violated established public policy and caused substantial injury to employees without countervailing benefits.

161. Defendants' practices were fraudulent as they misrepresented employees' exempt status and commission structures while concealing their true hours worked and wages owed.

162. Class members are entitled to restitution of all unpaid wages and injunctive relief to prevent future violations.

**CLASS-WIDE RELIEF SOUGHT**

163. Plaintiff seeks certification of the Classes under Rule 23(b)(3) for damages and under Rule 23(b)(2) for injunctive relief.

164. Plaintiff seeks appointment as Class Representative and his counsel as Class Counsel.

165. On behalf of the Classes, Plaintiff seeks: (a) unpaid wages including minimum wage, overtime, and doubletime; (b) meal and rest break premiums; (c) unpaid sales commissions; (d) unreimbursed business expenses; (e) waiting time penalties; (f) wage statement penalties; (g) interest at the legal rate; (h) restitution under Business and Professions Code § 17200; (i) injunctive relief requiring Defendants to comply with California wage and hour laws; and (j) attorneys' fees and costs under Labor Code §§ 218.5, 226, 1194, 2699, Code of Civil Procedure § 1021.5, and other applicable statutes.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Declare Defendants' respective conduct described herein to be in violation of the laws set forth herein;
2. An order that the action be certified as a class action;
3. An order that Plaintiff be appointed class representative;
4. An order that counsel for Plaintiff be appointed class counsel;
5. Unpaid Wages;
6. Actual Damages;
7. Statutory Damages;
8. Liquidated Damages;
9. Restitution;
10. General damages from Xerox as to Plaintiff FEHA and tort claims;
11. Special damages from Xerox as to Plaintiff's FEHA and tort claims;
12. Declaratory relief;
13. Equitable relief;
14. Pre-judgment interest;
15. Statutory penalties;
16. Civil penalties under PAGA against Xerox;
17. Costs of suit;
18. Interest;
19. Reasonable attorneys' fees; and
20. Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury for all issues and each and every cause of action so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure, and California's Labor Code and Fair Employment and Housing Act. This excludes Plaintiff's PAGA claims, which shall be tried by the judge assigned to this action pursuant to State law.

Dated: September 3, 2025

GOLD SUMMIT LEGAL

*/s/ Erik J. Christensen*

ERIK J. CHRISTENSEN
Attorney for Plaintiff
KEVIN MCCARTHY

# EXHIBIT A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 5, 2025

Erik Christensen
Gold Summit Legal, Inc., 548 Market St., Ste. 41750
San Francisco, CA 94104

RE: **Notice to Complainant's Attorney**
CRD Matter Number: 202505-29270705
Right to Sue: McCarthy / Xerox Corporation et al.

Dear Erik Christensen:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 5, 2025

RE: **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202505-29270705
Right to Sue: McCarthy / Xerox Corporation et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR
Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 5, 2025

Kevin McCarthy
,

RE: **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202505-29270705
Right to Sue: McCarthy / Xerox Corporation et al.

Dear Kevin McCarthy:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective May 5, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
Kevin McCarthy CRD No. 202505-29270705

Complainant,

vs.

Xerox Corporation
800 Phillips Rd., 209-07A
Webster, NY 11580

Xerox Business Solutions, LLC
8701 Florida Mining Blvd.
Tampa, FL 33634

Respondents

---

**1.** Respondent **Xerox Corporation** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.**Complainant is naming **Xerox Business Solutions, LLC** business as Co-Respondent(s).

**3**. Complainant **Kevin McCarthy**, resides in the City of **,** State of **.**

**4**. Complainant alleges that on or about **January 17, 2025**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's military and veteran status, age (40 and over), disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, laid off, denied hire or promotion, denied accommodation for a disability.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and as a result was terminated, laid off, denied any employment benefit or privilege, denied accommodation for a disability.

**Additional Complaint Details:** Kevin McCarthy broke his back many years ago during or after his military service, and he re-injured it after he was employed by Xerox Corporation, Xerox Business Solutions, LLC, or one of their affiliated companies, in a commissioned sales role. At all times during his employ, Mr. McCarthy was over the age of 40. His employer, whichever entity that was, failed to engage him in the interactive accommodation process despite knowing about Mr. McCarthy's injuries and needs. As a result, Mr. McCarthy was grossly overworked, putting in 12-20 hour workdays (often 6-7 days per week) where he was required to sit or stand for prolonged periods of time that caused him discomfort and aggravated his injuries. Then, after Mr. McCarthy informed his employer that he required another surgery on his back, he was terminated shortly thereafter. This, in turn, denied Mr. McCarthy the medical benefits that he required to have his surgery performed by the surgeon that he had selected. And this occurred despite Mr. McCarthy still being one of his employer's best salespeople, often ranking in the top 10 or 20 nationally. Mr. McCarthy's employer replaced him with younger, non-veteran, and/or able-bodied individuals who lacked Mr. McCarthy's experience and sales performance. The facts are developing given that Mr. McCarthy's employer has failed to comply with his pre-litigation employee inspection requests, hence the truncated nature of this description.

VERIFICATION

I, **Erik J. Christensen**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The matters alleged are based on information and belief, which I believe to be true.

On May 5, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Reno, Nevada**